## Thomas E. Proctor *vs.* Lydia C. Whitcomb.

Suffolk.    Jan. 9. — March 5, 1883.    Field & W. Allen, JJ., absent.

In an action against the indorser of a promissory note, payable at a certain bank, it appeared that the bank lent the maker of the note a sum less than the face of the note on the pledge of it; that subsequently the maker, while indebted to the bank in that sum, failed, and the bank procured from him a note for the amount of the loan, payable on demand, containing a clause declaring that the note in suit was held as collateral security for it, and that the bank might sell the collateral note on the non-performance of the promise, either at public or private sale; and that the second note was afterwards sold and transferred to the plaintiff, the note in suit, held as collateral security for it, being delivered with it to him. The plaintiff, who was called by the defendant, testified that he paid the full face value of the note thus bought, knew that the note in suit was collateral security for it, and received it as such. It also appeared that the plaintiff afterwards sold the note in suit for its full face value to a person

who sought to collect its full amount, and who subsequently re-transferred it to the plaintiff. The plaintiff, who now sought to recover only the amount of the loan, asked the judge to instruct the jury that there was no evidence that the bank sold to the plaintiff absolutely the collateral security, or did anything more than to sell to the plaintiff the debt for which it held this security, and the interest of the bank in the collateral security, as such. *Held,* that this instruction should have been given.

CONTRACT upon a promissory note for $2500, dated January 9, 1877, payable four months after date, at the Eliot National Bank of Boston, to the order of the makers, Whitcomb and Thayer, and indorsed by them and by the defendant. At the trial in the Superior Court, before *Aldrich,* J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*J. D. Ball & B. L. M. Tower,* for the plaintiff.

*R. M. Morse, Jr. & H. L. Harding,* for the defendant.

DEVENS, J. The plaintiff requested the court to instruct the jury that there was no evidence that the bank sold to the plaintiff absolutely the collateral security, or did anything more than to sell to the plaintiff the debt for which it held this security, and the interest of the bank in the collateral security as such. A reference to the previous instruction given by the court shows that what the plaintiff meant, and what he must have been understood to mean, by an absolute sale, was a sale of the note signed by the defendant for $2500, separately from the transfer of the debt which it was intended to secure, and independently of its relation thereto.

There was evidence that the note on which this suit is brought, and on which the plaintiff now seeks to recover the sum of $1573.54, was one made by the defendant for the accommodation of Whitcomb and Thayer, to be used by them at the Eliot Bank; and that the latter sum was lent to them by the bank on the pledge of it. Subsequently, on July 9, 1877, Whitcomb and Thayer, being indebted to the bank for this sum, which then stood as an account, failed, and the bank procured from them a note of $1573.54, payable on demand, which contained a clause declaring that the $2500 note was held as collateral to it, and that the bank might sell the collateral note on the non-performance of the promise, either at public or private sale. This note was afterwards sold and transferred to the

plaintiff, the note of $2500 held as collateral security for it being delivered with it to him. The plaintiff, who was called by the defendant, was the only witness who testified to the circumstances of this transaction; and he stated that he paid the full face value of the note of $1573.54, knew that the note of $2500 was collateral security for it as therein recited, and received it as such. The jury were certainly not bound to accept the statement of the plaintiff against other evidence, if such existed; but the note and that which was collateral to it were produced together by the plaintiff, and, if the defendant sought to establish that there had been an absolute and independent sale of the collateral security, it was for her to do so. Some affirmative evidence to show this was necessary. It was not afforded, even if it be conceded that the jury may not have given credence to the plaintiff's account of the transaction.

Nor, even if it does appear that the plaintiff, in purchasing the claim, hoped or expected that there was in the $2500 note an excess of collateral security, which he might in some way be able to apply so as to satisfy other claims which he held against the insolvents, or partially so, and that, seeking to obtain an advantage thereby, he afterwards sold the note of $2500 for its full face value to one who sought to collect its full amount, and who has since re-transferred it to the plaintiff, is evidence thus afforded of any absolute sale of the collateral security. The purpose that the plaintiff had in buying the claim, and the use sought to be made of the collateral security afterwards, do not supply evidence to control the fact that the claim and the collateral security were transferred together.

We are therefore of opinion that the instruction requested should have been given. We have not deemed it necessary to consider whether, if a sale of the $2500 note had actually been made as a separate and independent transaction, at the time when the transfer of it took place, such sale would have been illegal, and whether, if so, the illegality would have been of such a character that this action could not be maintained by the plaintiff for the amount for which it was held as collateral. These are questions involved in another instruction to which the plaintiff objects; but, at a subsequent trial, the case may be presented in a different aspect.                    *Exceptions sustained.*